## Ashley Wire Company v. Frank Mercier.

1. EVIDENCE—*Conclusion of a Witness.*—An objection to a question by which a witness was left to decide what is reasonable care, is properly sustained.

2. MASTER AND SERVANT—*Duty of the Master as to Machinery.*—The law makes it the duty of the master to keep the machinery used by his servants in a reasonably good state of repair.

**Trespass on the Case,** for personal injuries. Error to the Circuit Court of Will County; the Hon. CHARLES BLANCHARD, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

SCHUYLER & KREMER and D. F. HIGGINS, attorneys for plaintiff in error.

HALEY & O'DONNELL and MORRILL SPRAGUE, attorneys for defendant in error.

MR. PRESIDING JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Defendant in error brought suit against plaintiff in error to recover damages for personal injuries, sustained by him while in its employ, by the falling of a crane with which he was at work. There was a verdict for $10,000 from which $3,000 was remitted, and judgment was entered for $7,000.

The following facts appeared on the trial: Defendant was engaged in the manufacture of fence wire and nails at Joliet, Illinois. The material used was steel rods which had to be annealed before they could be drawn to the required size. In the factory there was an annealing room in which there were some sixteen or eighteen pots, as they were called. They were long iron tubes about three feet in diameter, and twelve or fourteen feet long, and extended down from the floor, loosely set in brick work. There was a furnace under them to heat them and their contents. The wire to be annealed was wound in coils around an iron stem or

spindle with an eye in one end, and the coils were taken to the pots and let down into them and taken out by means of a crane. The crane had a mast about twenty feet high, supporting a boom near its top at right angles with it, extending thirty feet from it. The coils were carried to and from the pots by swinging the boom with a rope, and there was an apparatus which traveled on the boom so as to operate at different distances from the mast; also moved by hand power. The coils were lowered and hoisted by power communicated from the machinery. The operators would hook into the eye of a stem and swing the coil to a pot and put two in a pot, one above the other. When the pots were filled they were covered and heated to a cherry red, and after being allowed to cool the coils were drawn out and distributed through the mill. The wire when heated and soft would frequently settle down and expand so as to stick to the sides of the pot, and the coils and pot would be lifted together. When this happened one of the men would run an iron bar down the side of the pot and loosen the wire from it so that it could be withdrawn. At the time plaintiff was injured he and a fellow-servant were operating the swinging motion of the boom by means of the rope. A boy was near the mast to apply the hoisting power and a fourth employe connected the hook from the hoisting pulleys with the sterm, and notified the boy when to apply the power. The coils on one stem stuck and it would not come out, but the wire and pot were lifted together a short distance. The power was shut off and the pot went back to its place. The employe who was connecting the apparatus and controlling the power took a bar and attempted to loosen the wire as usual. He called for the power again and it was applied and the crane fell. The boom struck plaintiff and injured him and killed his assistant.

The crane fell because a guy rod opposite the pot, running from near the top of the mast to a brick wall, gave way and was pulled through the wall. The charge against defendant under which it was claimed that it was liable was a want of proper care in the support and fastenings of that guy

rod.  There were four guy rods to hold the top of the mast in place, and they ran to the walls at different places.  The one that gave way ran to a brick partition wall about sixteen feet high and twelve inches thick.  The rod ran through the wall at an angle of about forty-five degrees at a point where the wall had an additional thickness of four inches on each side, called pilasters, making it twenty or twenty-one inches thick, and the rod came out on the farther side in the angle of the main wall and pilaster.  In the angle there was a cast iron plate thirty inches long extending down from the top of the wall with one flange four inches wide resting against the pilaster and the other flange eight inches wide against the main wall.  The rod ran through the plate at about the middle and was fastened with a nut.  The plate cracked in the center in sound iron and let the rod go through the wall.

It is argued that the crane and fastenings were constructed according to the most approved methods and were in good repair, and therefore the defendant had fulfilled its duty in respect to them.  Several witnesses testified that the method adopted was an approved one and that in their opinion it was sufficient.  But, however that may have been, there was evidence that long before this accident, the wall in question had bulged where the rod went through, so as to destroy the even bearing on which the cast-iron plate should have rested, that the bulging was visible, and that timbers had been put up to strengthen it.  If the wall had bulged there had been an actual demonstration of insufficiency in this particular case, whatever the general rule may have been.  The fact was disputed, but the jury were fully justified in finding that there was a bulge as claimed.  Timbers had been put up on two different occasions to strengthen the wall.  They were eight by eight inches and sixteen feet long and were set up against the wall and fastened at the top and bottom.  The master mechanic of defendant, who put them up and thought the fastenings safe, said that the wall was in good condition when the first one was put up, but that there was a slight bulging of the wall

opposite where the casting went when he put the other timber up to bear on the spot that showed signs of weakening. Unquestionably defendant's attention was called to the condition of the wall. The evidence for defendant was that putting up the timbers was merely precautionary, and the wall was thought safe after they were put up. The timbers held the wall, and that was solid after the accident with nothing wrong except a hole in it, but it is evident that they did not restore or did not preserve the even bearing of the iron plates, and the catastrophe came from that cause. That was essential to safety, and we think that there was negligence in not looking after it.

It is insisted that plaintiff was not in the exercise of ordinary care at the time of his injury, because he was under the boom, and that he ought to have stood away from it. Counsel say that he was looking down into the pot, but there was no evidence of that. So far as appears he was attending to his work. He and his assistant had swung the boom over the pot, and were waiting until the time should come to swing it back. If he neither knew nor had any reason to apprehend danger from the crane he would have a right to rely upon its safety and need not keep out of the way of unknown and unexpected danger.

But it is also claimed that his fellow-servant, the boy who applied the power to do the hoisting, was negligent because he did not shut the power off at once when the stem did not come out. It was a common thing to lift both stem and pot, and there was ordinarily no danger in lifting until that happened. They were trying to get the stem out, and there was no negligence in making the effort.

Some errors are claimed to have occurred in the admission of evidence. Plaintiff was allowed to prove that the rocking motion and swinging motion were originally accomplished by machinery, but that the appliances were broken, and they were effected by hand and by the rope. It was objected that there was no claim of negligence on that account. The evidence was mainly descriptive of the crane, and when admitted showed without contradiction that the condition

of those appliances did not affect the strength of the machine, or contribute to the fall of the crane in any way. We do not think that the jury could have understood that a recovery could be had because the boom was swung by hand, and we can not see how the evidence could be harmful to defendant.

Plaintiff was also allowed to show that an employe of defendant told the superintendent on two occasions shortly before the accident that he was afraid to work under the crane. On the second occasion the employe was discharged. The objection is that he did not point out a particular defect, but we think the evidence competent to prove notice of the unsafe condition of the crane, such as would cause a prudent man to inspect it or make some inquiry of the employe for the cause of the danger. He did neither, and the crane fell with fatal result to one and serious injury to another, within a couple of hours after the employe was discharged.

An objection was sustained to a question by which a witness was left to decide what was reasonable care, and the ruling was right.

The second and fourth instructions given at the instance of plaintiff are objected to as ignoring the principle that if plaintiff knew of the defect in the fastening and did not report it to defendant he would be held to assume the risk incident to it. There was no evidence on which to found such a qualification of the instructions. Plaintiff had only worked in that place three days when injured. The boom extended thirty feet from the mast, and the rod ran back forty feet from it, so that he was not near the fastening. The defect did not come under his notice in the course of his duties. As there was no evidence of that kind it was properly ignored. We see no error in the instruction given by the court on its own motion, nor in the refusal of the fifth or eleventh, asked by defendant. The fifth ignored the condition of the wall, which was the apparent cause of the plate being broken, and the eleventh, so far as correct, was embraced in the one given by the court on his own motion. We do not regard the damages as excessive, and deeming the judgment right, it will be affirmed.